UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LOUISE JOHNSON,

       Plaintiff,                                   Hon. Wendell A. Miles

v.                                                 Case No. 1:06-CV-82

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/


**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim (brought on behalf of her disabled daughter) for survivor's benefits under the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff's daughter is not entitled to survivor's benefits. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Lekisha Dyer was born on September 8, 1979. (Tr. 30). She suffers from autism and has been receiving disability income since July 1, 1991. (Tr. 15, 30, 72). Lekisha Dyer's stepfather, Earnest Johnson, Jr., passed away on April 5, 2001. (Tr. 30).

On January 22, 2002, Lekisha's mother (Plaintiff) applied for survivor's benefits on behalf of her daughter. (Tr. 30-32). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 33-55). On July 19, 2004, Plaintiff appeared before ALJ Michael Logan. (Tr. 103-17). In a written decision dated December 17, 2004, the ALJ determined that Lekisha Dyer was entitled to survivor's benefits. (Tr. 15-17). The Appeals Council reversed this determination. (Tr. 7-9). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision.

## ANALYSIS

At the outset, the Court finds it necessary to clarify the nature and scope of Plaintiff's appeal. Plaintiff appears to take the position that she is appealing the initial decision in this matter, the favorable decision issued by ALJ Logan. For example, Plaintiff urges that the "ALJ's decision should be affirmed." As previously noted, however, the Appeals Council reversed ALJ Logan's decision. It is this latter determination which constitutes the decision of the Commissioner of Social Security. This is significant because this Court lacks the authority to "affirm" an intermediate determination by an ALJ which is subsequently rejected by the Commissioner. Instead, the question presented by Plaintiff's appeal (and the only question which this Court can legitimately address) is whether the Commissioner's decision (as embodied in the ruling issued by the Appeals Council) is supported by substantial evidence.

The Social Security Act provides that a disabled child (or step-child) of a fully insured wage earner is entitled to receive survivor's benefits if she "was dependent upon" the wage earner at the time of the wage earner's death. 42 U.S.C. §§ 403(d)(1), 416(e). In this respect, the Act provides that a child is deemed dependent upon the insured wage earner if, for the 12-month period preceding the wage earner's death, "the child was receiving at least one-half of [her] support from" the wage earner. 42 U.S.C. § 402(d)(4); 20 C.F.R. § 404.366.

Federal regulations provide that a wage earner provides one-half of a child's support if: (1) he makes regular contributions for the child's ordinary living costs; (2) the amount of these contributions equals or exceeds one-half of the child's ordinary living costs; and (3) any income (from sources other than the insured person) the child has available for support purposes is one-half

or less of the child's ordinary living costs. *See* 20 C.F.R. § 404.366. Ordinary living costs are defined as "the costs for your food, shelter, routine medical care, and similar necessities." *Id.*

There is no dispute that at the time of his death, Earnest Johnson, Jr. was fully insured for purposes of the Social Security Act. The question presented by Lekisha's application for benefits, therefore, was whether she was receiving at least one-half of her support from her step-father, Earnest Johnson, Jr.

Determining the percentage of support which a child receives from a parent may not always be susceptible to easy calculation. To facilitate this calculation, therefore, the Social Security Administration has developed the "pooled-fund method." *See Drombetta v. Secretary of Health and Human Services*, 845 F.2d 607, 609 (6th Cir. 1987). Under the pooled-fund method, it is presumed that all income coming into a household is pooled for the support of the household and that each member of the household shares equally in the funds used for support. This presumption may be rebutted, however, by evidence that the household income was not pooled or that all income for support was not shared equally. *Id.*

ALJ Logan determined that in the 12-month period preceding Mr. Johnson's death, the four-member household received income in the amount of $35,768. (Tr. 15). The pooled-fund method presumes that each member of the household requires an equal amount of the household income for his or her support. Using the pooled-fund method, therefore, results in the determination that Lekisha required one-quarter of the household's income ($8,942) for her support. As ALJ Logan recognized, because the amount Lekisha received in disability benefits ($6,198) was more than one-half of the amount required for her support, application of the pooled-fund method would result in the denial of Lekisha's claim for survivor's benefits. (Tr. 15-16).

ALJ Logan, however, declined to apply the pooled-fund method. As he stated, "[t]he problem with [this] approach is that reasonably it would cost more money to support the claimant because she is autistic." (Tr. 15). In this respect, Plaintiff asserted that Lekisha, as a result of her disability, inflicted significant and costly damage to the family residence. (Tr. 38-40, 72, 74, 76, 79). In support of this assertion, Plaintiff submitted evidence that during the relevant time period the household incurred $2,500 in repair costs occasioned not by normal wear and tear, but rather by Lekisha's violent and destructive behavior. (Tr. 38-40, 79).

ALJ Logan added the costs of these repairs to the amount which the pooled-fund method assumed was required for Lekisha's support. (Tr. 16). The ALJ also added to this amount an additional $1,000 which represented "the claimant's disproportionate clothing expense and the expense for repairs of household fixtures." According, ALJ Logan concluded that Lekisha required $12,442 for her support. Finding that Mr. Johnson provided 57 percent of this amount, he determined that Lekisha was entitled to survivor's benefits. *Id.*

The Appeals Council rejected ALJ Logan's determination. The Council agreed that during the relevant time period the household received income in the amount of $35,768. (Tr. 8). However, the Council faulted the ALJ for including in the amount required to support Lekisha the entire cost of the aforementioned household repairs. The Appeals Council reasoned that "[a]ll members of the household benefitted equally from the repairs to their home, although these repairs might have been caused solely by Lekisha." The Council further concluded that "[t]he repair expenses were paid for from the family's pooled income; therefore, each member of the household was equally affected by these expenses and there is no effect on the support determination." Using the pooled-fund method, the Appeals Council determined that Lekisha required only $8,942 for her

support, more than one-half of which was provided by her own disability payments. Accordingly, the Council reversed the ALJ's decision and denied Lekisha's application for survivor's benefits. *Id.* The decision by the Appeals Council, however, is not supported by substantial evidence.

The Appeals Council's decision rests upon two fundamental, yet unsupported, presumptions: (1) that 100 percent of Lekisha's disability income was available for her support; and (2) that Lekisha required the same amount for her support as the other three members of her family.

With respect to the amount required to care for Lekisha, as the ALJ recognized "[i]t is very reasonable to conclude that extra expenses would be necessarily expended to support such a troubled and damage-causing individual." (Tr. 16). This observation seems almost obvious given Lekisha's disability. Nevertheless, the Appeals Council assumed that Lekisha required no more resources for her support than the other members of her family. The record contains no evidence supporting the Appeals Council's position in this regard. Plaintiff, however, has submitted evidence demonstrating that Lekisha's care was, in fact, more expensive than that of the other family members. (Tr. 38-40, 72, 74, 76, 79).

As Defendant acknowledges, the pooled-fund method (on which the Appeals Council relied) is inapplicable where "[t]here is evidence indicating all income for support was not shared equally." (Dkt. #14 at 4; Dkt. #14, Exhibit A at 9). Unfortunately, because neither the ALJ nor Plaintiff's council sufficiently developed the record on this crucial issue, it is not clear precisely how much Lekisha required for her support.[1] This failure to sufficiently develop the record

---

[1] The Court notes that the ALJ's failure to sufficiently develop the record in this matter is not mitigated by the fact that Plaintiff was represented by counsel, because in every administrative proceeding, regardless whether the claimant is represented, the ALJ has an affirmative duty to develop the factual record upon which his decision rests. *See*, *e.g.*, *Osburn v. Apfel*, 1999 WL 503528 at *7 (6th Cir., July 9, 1999) ("the responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge"); *Echevarria v. Sec'y of Health and Human Services*, 685 F.2d 751, 755 (2nd Cir. 1982) (given the non-adversarial nature of a benefits proceeding, the ALJ "must himself affirmatively develop the record").

notwithstanding, the evidence submitted by Plaintiff is sufficient to rebut the presumption that it cost no more to care for Lekisha than the other three members of her family. Resolution of this factual question must be resolved on remand.

In sum, the Appeals Council's conclusion that Lekisha required no more resources for her support than the other members of her family is not supported by substantial evidence. Moreover, the conclusion by the Appeals Council that 100 percent of Lekisha's disability income was available for her support is likewise not supported by substantial evidence.

With respect to the household repairs occasioned by Lekisha's destructive behavior, the Appeals Council stated that "[t]he repair expenses were paid for from the family's pooled income." (Tr. 8). The record contains no evidence supporting this conclusion. This matter was never addressed by the ALJ at the administrative hearing, nor does the record contain documentary evidence supporting such. Plaintiff, however, has submitted evidence indicating that the repairs at issue were paid for entirely from Lekisha's disability payments. (Tr. 38-40, 76). If Lekisha was paying the entire cost of these repairs, the Appeals Council's conclusion that such were paid for with the family's pooled income is inaccurate. Accordingly, the amount of Lekisha's income that was available for her support was obviously less than 100 percent as the Appeals Council concluded.

The Appeals Council further determined that "[a]ll members of the household benefitted equally from the repairs to their home." As noted above, the evidence indicates that the cost of these repairs was paid by using the money Lekisha received in disability payments. Thus, the Appeals Council's conclusion that 100 percent of Lekisha's disability payments was available for her support is erroneous because as the Appeals Council itself recognized, *all members of the household* benefitted from these repairs. In other words, if everybody in the household benefitted

from something that Lekisha paid for with her disability monies, that necessarily means that a portion of Lekisha's income was being utilized for the support of the other family members and was, therefore, not available for her own support as the Appeals Council concluded.

In sum, the other presumption on which the Appeals Council's decision rests, that 100 percent of Lekisha's disability payments was available for her support is not supported by substantial evidence. It is unclear precisely what percentage of Lekisha's income *was* available for her support because the ALJ (and Plaintiff's counsel) failed to adequately develop the record on this point. This factual question must likewise be resolved on remand.

Defendant asserts that the household repairs discussed above should not even be considered in this appeal because there are not properly characterized as "ordinary" living costs. In support of this argument, Defendant relies on a provision of the Social Security Program Operations Manual System (POMS) which provides that neither "extraordinary expenditures for repairs" nor "improvements" are included when "computing the value of room and board." *See* Social Security Program Operations Manual System (POMS) RS 01301.080(B)(3).

First, Plaintiff has presented evidence that the household repairs were neither "extraordinary" expenses nor "improvements," but were instead occasioned by Plaintiff's disability-related behavior. The Court further notes that the Appeals Council did *not* find that the repairs were not ordinary living costs, but instead faulted the ALJ for attributing the entire amount for such repairs to the amount required for Lekisha's support.

Accordingly, for the reasons articulated herein, the Court finds that the Commissioner's decision is not supported by substantial evidence. While the Court finds that the Commissioner's decision fails to comply with the relevant legal standards, Lekisha can be awarded

benefits only if "all essential factual issues have been resolved and the record adequately establishes [her] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling). As discussed above, while the Commissioner's decision fails to comply with the relevant legal standard, there remain several unresolved factual issues which preclude a determination by this Court as to whether Lekisha is entitled to survivor's benefits. The Court recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings, including but not necessarily limited to, the matters discussed herein.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the Commissioner's decision does not conform to the proper legal standards and is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  June 25, 2007                                              /s/ Ellen S. Carmody
                                                                                         ELLEN S. CARMODY
                                                                                         United States Magistrate Judge